**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**UNITED STATES OF AMERICA**
        Plaintiff,

   v.                                            Case No. 06-CR-336

**JUAN FLORES-BOBADILLA**
        Defendant.

---

### SENTENCING MEMORANDUM

Defendant Juan Flores-Bobadilla pleaded guilty to conspiracy to distribute cocaine, contrary to 21 U.S.C. §§ 841(a)(1) & (b)(1)(C) and 846, and I set the case for sentencing. In imposing sentence, I first calculate the advisory sentencing guideline range, then determine the ultimate sentence under all of the factors set forth in 18 U.S.C. § 3553(a). E.g., United States v. Bush, 523 F.3d 727, 729 (7th Cir. 2008).

### I. GUIDELINES

The parties agreed to a base offense level of 18 under U.S.S.G. § 2D1.1(c)(11), and that defendant qualified for a 2 level reduction under the safety valve provision, U.S.S.G. § 2D1.1(b)(11), and a 3 level reduction for acceptance of responsibility, § 3E1.1, for a final level of 13. Coupled with defendant's criminal history category of I, level 13 produces an imprisonment range of 12-18 months.

### II. SECTION 3553(a)

**A.    Sentencing Factors**

Section 3553(a) directs the sentencing court to consider:

   (1)    the nature and circumstances of the offense, and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The statute requires the court, after considering these factors, to impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing set forth in sub-section (a)(2). The court must give respectful consideration to the guidelines in making this determination, see Gall v. United States, 128 S. Ct. 586, 594 (2007), but it may not presume that the guideline sentence is the correct one, see Rita v. United States, 127 S. Ct. 2456, 2465 (2007). Rather, the court must make an individualized assessment under all of the § 3553(a) factors, Gall, 128 S. Ct. at 596-97, keeping in mind that the parsimony provision quoted above represents the "overarching" command of the statute, Kimbrough v. United States, 128 S. Ct. 558, 570 (2007). After settling on an appropriate sentence, the court must adequately explain the chosen sentence to allow for review and to promote the perception of fair sentencing. Gall, 128 S. Ct. at 597.

**B.  Analysis**

    **1.  The Offense**

This prosecution arose out of the government's investigation of a large-scale cocaine trafficking organization in the Waukesha, Wisconsin area, which involved several wiretaps, including for the phone of Javier Aguilera, the primary actor in the conspiracy. Pursuant to that wiretap, agents intercepted about twenty-five drug-related calls between defendant and Aguilera, which revealed that defendant obtained one to nine ounce quantities of cocaine. The calls further revealed that defendant acted primarily at Aguilera's direction. For instance, during one intercepted call recounted in the pre-sentence report ("PSR"), defendant asked Aguilera, "[W]hat do you want me to do with this shit? . . . Do you want me to sell it?" To which Aguilera responded, "If you can sell it, yeah sell it." Defendant then asked how much it was, and Aguilera told him almost an ounce. Defendant then inquired how much Aguilera wanted for it, to which Aguilera responded $650. In another call, Aguilera told defendant he was going to drop off some cocaine, which a co-actor would later pick up. The parties agreed to a relevant conduct amount of 100 to 200 grams.

    **2.  The Defendant**

Defendant was twenty-one years old, with a minimal prior record consisting of two disorderly conduct convictions for which he received fines.[1] Defendant grew up in a stable home, but he nevertheless joined a neighborhood gang in his teen years, which led to his previous scrapes with the law. However, he appeared to be maturing recently. He had been in a stable relationship with his girlfriend for several years, and the two recently had a child to

---

[1] Neither offense scored criminal history points under U.S.S.G. § 4A1.2(c).

3

whom defendant appeared devoted. He reported caring for his child nearly full-time while his girlfriend worked. Defendant admitted past use of controlled substance, but all of his screens on pre-trial release in this case were negative, and he otherwise complied with his conditions. I also received numerous letters from friends, family and educators, which depicted someone with many positive qualities. For instance, the letter from defendant's parents indicated that defendant provided care and assistance to his father after the father was badly injured in an accident. Three former teachers described him as a good and respectful student, and he was making efforts to further his education at Waukesha County Technical College ("WCTC"). Defendant's girlfriend's parents both wrote that defendant was a decent young man who treated their daughter well. In his letter to the court, defendant thanked the government for arresting him, as it had taken the "blindfold" off his eyes.

### 3. The Sentence

The guidelines recommended 12-18 months in this case, but under all of the circumstances I found a sentence a bit below that range sufficient but not greater than necessary. Cocaine trafficking is obviously a serious crime, but the amounts involved here were rather minimal. Further, defendant acted at Javier Aguilera's direction, and it appeared from the contents of the recorded calls that he needed such direction to know what to do. Finally, the record contained no evidence of any violence, weapon possession or threats associated with his offense. Therefore, I found a prison sentence slightly below the range sufficient to provide just punishment. See 18 U.S.C. § 3553(a)(2)(A).

I also found such a sentence sufficient to protect the public and deter defendant from re-offending. See 18 U.S.C. §§ 3553(a)(2)(B) & (C). He had a minimal record and had never before served any sort of custodial sentence. I also took into account his genuine expression

4

of remorse and his efforts to cooperate with the government, as well as his positive qualities and community support, which would assist him in staying on the right track. He appeared to have limited correctional treatment needs, which could be met in the community. See 18 U.S.C. § 3553(a)(2)(D).

Defendant served about 7 ½ months of pre-trial detention in this case, slightly less than the low end of the guideline range with good time credit. For the reasons set forth herein and those stated on the record, I found this period of custody sufficient to satisfy all of the purposes of sentencing.

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for a period of time-served. This sentence varied just slightly from the guidelines, and because it was supported by the particular facts of the case it created no unwarranted disparity. See 18 U.S.C. § 3553(a)(6). Upon release, I ordered defendant to serve three years of supervised release, with conditions including drug testing and treatment and avoidance of any gang association. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 27th day of February, 2009.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge